UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRENDA L. LEE,

        Plaintiff,

v.                         CIVIL ACTION No. 2:18cv214

NANCY BERRYHILL, Commissioner
of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Brenda L. Lee ("Lee") brought this civil action pursuant to 45 U.S.C. § 405(g), seeking judicial review of the decision by the Commissioner of the Social Security Administration ("Commissioner") to deny her claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). Lee raises multiple assignments of error in the decision by the Administrative Law Judge ("ALJ") that heard her claim. Broadly speaking, Lee argues that the ALJ's decision is not supported by substantial evidence and failed to properly apply binding Fourth Circuit precedent.

This action was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). The matter is now before the court on the parties' cross-motions for summary judgment. For the reasons stated below, this Report recommends that the court DENY

1

Plaintiff's Motion for Summary Judgement, (ECF No. 14), GRANT Defendant's Motion for Summary Judgment, (ECF No. 25), and AFFIRM the Commissioner's decision.

## I. Procedural History

Lee filed an application for benefits on July 10, 2014, alleging a disability onset date of April 21, 2014. (R. at 174). The reviewing state agency denied her claim at the initial stage and on reconsideration. (R. at 106, 118). On July 27, 2015, Lee requested a hearing on her disability claim before an ALJ. (R. at 125). The hearing took place on March 1, 2017, with Lee represented by counsel. (R. at 41). In a decision dated April 26, 2017, the ALJ concluded that Lee was not disabled as defined by the Act and therefore denied her claim for benefits. (R. at 11-20). Lee then requested review of the ALJ's decision by the Appeals Council. (R. at 171). The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1). Lee then filed this civil action for judicial review.

## II. Factual Background

### A.  Lee's Medical and Treatment History

Lee was 51 years old at the time of her alleged disability onset in 2014. (R. at 19). She completed high school and one year of college and obtained certification in early childhood special education. (R. at 47). She previously worked as a teacher's aide in general and special education. (R. at 47, 102).

During the claimed period of disability, Lee has complained of pain associated with various physical disorders in her knees, hips, spine, and shoulders. The bulk of the evidentiary record covers a period from 2011 to the present, though it notes that Lee underwent cervical spine surgery in 2007. (R. at 314, 376). Between 2011 and 2013, Lee was regularly treating with Dr. Arthur Wardell for neck and back pain. (R. at 314). During this time, Lee exhibited mild to moderate range-of-motion restrictions in her neck and back as well as continuing pain and tenderness. (See R. at 314-15). Lee suffered a right thoracic injury in a fall in early 2013, for which she was prescribed medication. (R. at 376). In September 2013, Lee underwent an EMG on her upper left extremity, which was normal. (R. at 315).

In December 2013, Lee underwent a lumbar spine MRI that showed an annular tear with central disc protrusion. (R. at 316). An EMG of her lower left extremity in January 2014 was normal. (R. at 316). Dr. Wardell noted radiating leg pain and tenderness and diagnosed left scapulothoracic bursitis. (R. at 316).

In February 2014, Lee saw Dr. Wardell for left knee pain which she said had begun the previous July. (R. at 316). X-ray examination revealed some tibial eminence hypertrophy but no fractures or dislocation. (R. at 316). Lee returned the following month and reported no improvement in her pain. (R. at 316). An MRI of her left knee showed a medial meniscus tear, for which she was

3

prescribed a pain patch. (R. at 317). After Lee presented with similar symptoms in April, Dr. Wardell recommended a left knee arthroscopy and physical therapy for her back. (R. at 317).

Dr. Wardell performed the left knee arthroscopy, arthroscopic patellar shaving, and arthroscopic microfracture chondroplasty on May 6, 2014. (R. at 323). Lee was "comfortable" at a follow-up examination on May 8 and planned to start physical therapy. (R. at 1359). In follow-up appointments through August 2015, Lee reported continuing pain but improvement with physical therapy. (R. at 1355-58). She received regular analgesic injections which were mostly effective and displayed normal range of motion. (R. at 1355-58). Dr. Wardell also noted neck and back tightness. (R. at 1356).

Lee underwent breast reduction surgery on May 14, 2015, which improved her upper back pain. (R. at 1332). On August 3, 2015, Lee complained of continuing pain and underwent a left knee X-ray that showed no fracture, dislocation, or degenerative change. (R. at 1355). Dr. Wardell opined that "[t]o a reasonable degree of medical certainty, I think Ms. Lee's microfracture chondroplasty of the lateral femoral condyle has failed." (R. at 1355). He prescribed a hinged knee brace and scheduled another lower left extremity EMG. (R. at 1355). The EMG showed a left lumbosacral radiculopathy with L5 and S1 involvement. (R. at 1355). Lee continued to report symptoms of tenderness and pain with mild restriction of movement in subsequent exams. (See R. at 1353-54).

4

Lee began treating with Dr. Tracey Pennington for pain management on August 12, 2015. (R. at 692). Dr. Pennington's initial evaluation indicated that Lee suffered from chronic musculoskeletal pain, specifically identifying her neck, low back, and right extremities. (R. at 692). Bending, walking, lifting, reaching, and sudden movements reportedly increased Lee's pain. (R. at 692).

On September 24, 2015, Lee was involved in a motor vehicle accident where she injured her neck, back, shoulders, and chest. (R. at 1174). Dr. Wardell evaluated her four days later and noted continuing pain, numbness, and tenderness, as well as mild restriction to range-of-motion. (R. at 1174). X-ray examination showed no fractures, dislocation, or degenerative change. (R. at 1174). Dr. Wardell diagnosed several musculoskeletal sprains and prescribed physical therapy and pain medication. (R. at 1174). Lee continued to participate in physical therapy for the next few months, which improved symptoms at first but reportedly offered less relief over time. (R. at 1173-74). Analgesic therapy allowed Lee to better tolerate her activities of daily living ("ADLs") and household tasks. (R. at 1332).

Pain management records from early 2016 showed mild tenderness in a hip examination but normal gait and strength. (R. at 1309). Lee reported that massages were more effective for pain relief than injections. (R. at 1319). After an examination on

February 1, 2016, Dr. Wardell diagnosed Lee with cervical spondylosis, lumbar radiculopathy, left shoulder bursitis, and left knee osteoarthritis. (R. at 1354). He prescribed physical therapy, which Lee reported was helping the following month. (R. at 1354). After diagnostic testing in March and April, Dr. Wardell added diagnoses of biceps tendonitis and a partial thickness rotator cuff tear. (R. at 1353). Lee continued to have moderate restrictions in range-of-motion. (R. at 1327). Dr. Wardell recommended "a left shoulder arthroscopy, debridement, distal clavicle excision, arthroscopic biceps tenotomy, possible open rotator cuff repair." (R. at 1327).

Records from Lee's alleged period of disability also document a diagnosis of depression and treatment with medication. (R. at 360-61, 905). Dr. William M. Waldrop of Norfolk Psychiatric Associates treated Lee during this period and recorded normal findings except for "blunted" affect. (R. at 874-908, 1337). Dr. Waldrop had previously opined that medication was effective in controlling Lee's symptoms and permitted her to continue working despite the condition. (R. at 905-06).

**B.  Opinion Evidence**

The record contains opinions and assessments regarding Lee's disability status from several sources. Dr. Wardell stated in his treatment notes on December 19, 2014, that "[t]o a reasonable degree of medical certainty, Ms. Lee is permanently and totally

disabled."[1] (R. at 1182). The record also includes a Physical
Residual Functional Capacity Evaluation dated December 31, 2015.
However, this evaluation does not include a patient name and
responds to several questions only with "see notes." (R. at 1175).
The subject (presumably Lee) would apparently be capable of
performing low-stress jobs but would experience pain or symptoms
that would frequently interfere with attention and concentration.
(R. at 1176). The subject could stand or walk less than two hours
per eight-hour workday, would require a sit-stand option, and would
need unscheduled breaks during an eight-hour day. (R. at 1177).
The patient would have substantial limitations lifting anything
over ten pounds and would likely be absent more than four days per
month. (R. at 1177-78).

An undated, partial RFC evaluation completed by Dr. Waldrop
indicated that Lee's symptoms were variable but well-controlled
when treated. (R. at 911). This evaluation stated that Lee could
tolerate moderate work stress and did not identify any physical
limitations. (R. at 911-13). Lee's depression symptoms could
apparently leave her unable to work for one to two weeks. (R. at
913).

---

[1] Prior to amendment on February 18, 2015, this entry read, "I
think Ms. Lee is permanently and totally disabled." (R. at 1182).

The record also contains disability assessments from multiple state agency physicians. Dr. Elliott Rotman assessed Lee's mental condition as non-severe, noting that she did not indicate any psych-related limitations. (R. at 83). Another state agency consultant reached the same conclusion on reconsideration, observing that Lee had minimal symptoms that were controlled by medication. (R. at 97). The consultant wrote that Lee "would be capable of a full range of simple and more complex work with only mild limitations from her non-severe impairments." (R. at 97).

State agency physician Robert Mogul, MD, completed an RFC evaluation and concluded that Lee could perform a range of light work. (R. at 84-87). Dr. Mogul stated that Lee could frequently lift or carry up to 10 pounds and occasionally lift or carry 20 pounds. (R. at 85). He also found Lee could stand/walk or sit for up to 6 hours in an 8-hour workday and that she had at least some postural limitations in all functional areas. (R. at 85). On reconsideration, the state agency consultant concurred with the light work RFC but noted some degenerative change in Lee's left knee. (R. at 101). He noted that analgesic injections and physical therapy improved Lee's condition. (R. at 101).

## C.   The ALJ Hearing

Lee appeared with counsel at the March 1, 2017 hearing before the ALJ. She testified regarding her past work, medical condition, daily activities, and physical limitations. (See R. at 41-75

(hearing transcript)). When the ALJ asked why she was unable to work, Lee said, "I am experiencing excruciating pain every day from my left shoulder down to my left foot." (R. at 49). Lee testified that she only climbed the stairs in her home two or three times per day due to pain in her left knee but could do so without assistance. (R. at 45-46, 54). Her hip and back pain require her to get up and walk around about every 45 minutes, and she can stand for 30-40 minutes at a time. (R. at 53, 61). She walks with a knee and back brace but no other assistive device, up to about 30 minutes at a time. (R. at 62). Lee also said she had difficulties driving due to left shoulder pain. (R. at 47-48). Lee testified that she received several surgeries (knee arthroscopy, breast reduction, shoulder surgery) which did not alleviate her pain. (R. at 50). She took two types of pain medication every day. (R. at 50). Lee said the medication causes drowsiness, so she usually naps once a day. (R. at 59). The medication does not affect her attention or concentration. (R. at 59). She takes additional medications for depression which also cause drowsiness. (R. at 60).

Lee described her typical day as constant pain alleviated with medication and laying down. (R. at 50). She said she cooks about three days a week, grocery shops with help, and drives a few times a week to appointments and church functions. (R. at 51). She can do some household chores but is limited in those that require

bending or lifting, such as moving wet laundry. (R. at 51-52, 56).
She watches TV for most of the day and reads the newspaper and
understands what she sees and reads. (R. at 51-52). She goes out
to eat about once a month and used to go to movies but has not
been in two years. (R. at 52).

The ALJ also heard testimony from a vocational expert ("VE").
The VE characterized Lee's prior work as light and semi-skilled.
(R. at 63). The ALJ's hypothetical for the VE posited a person of
the same age, education, and work experience as Lee, and with the
following limitations:

> [L]imited to light work but is limited to lifting from
> waist to chest level; avoid overhead work with the left
> upper extremity; avoid pushing and pulling with the left
> lower extremity and left upper extremity; can stand and
> walk no longer than 30 minutes at a time before having
> to sit; can sit 45 to 60 minutes before standing for a
> few minutes; avoid climbing ladders, ropes, and
> scaffolds, crawling, kneeling, and crouching but can
> stoop occasionally; avoid constant reaching with the
> left upper extremity; avoid working around vibrations
> and hazards such as moving dangerous machinery and
> unprotected heights.

(R. at 63). The VE testified that jobs would be available to such
a person, identifying cashier, marker, and mail sorter. (R. at 65-
66). The VE expected that certain implied components of the ALJ's
hypothetical—specifically, a sit/stand option and directional
reaching limitations—would likely reduce but not eliminate the
availability of these jobs. (R. at 66). In response to questioning
from Lee's attorney, the VE testified that most or all the jobs

mentioned would not tolerate a person's being off-task for more than ten percent of the workday, or more than three absences per month. (R. at 67). The VE said that certain employers had greater flexibility to accommodate lengthy absences due to, for example, surgical recovery periods. (R. at 69-70). Thus, the VE opined that incorporating such limitations into the hypothetical would reduce but not eliminate job availability. (R. at 70).

D.   **Post-Hearing Evidence**

Plaintiff submitted additional medical records on July 5, 2017, according to an automatic time stamp at the top of the records. (R. at 38-40). These records contain Dr. Wardell's treatment notes from May to December 2016. The records show that Lee underwent left shoulder arthroscopy with findings of a partial thickness tear of the rotator cuff and a labral tear. (R. at 40). Lee said that post-surgery physical therapy was helping until October, but by November it was apparently not providing much relief. (R. at 39-40). An evaluation in December showed some limitation in range-of-motion and deltoid tenderness. (R. at 38).

Also included in Lee's July 5 submission was a Physical Residual Functional Capacity Evaluation form completed on March 1, 2017 by Dr. Wardell. (R. at 33-37). This evaluation listed diagnoses of cervical spondylosis, lumbar radiculopathy, osteoarthritis of the knees, and shoulder bursitis. (R. at 33). According to Dr. Wardell's evaluation:

11

- Lee could sit for up to 6 hours and stand or walk for up to 2 hours in an 8-hour day. (R. at 34).

- Lee required a sit/stand option and would need to take about 4 unscheduled breaks per day. (R. at 34).

- Lee's symptoms would constantly interfere with her attention and concentration. (R. at 35).

- Lee could occasionally lift and carry less than 10 pounds and rarely carry between 10 and 20 pounds. (R. at 35).

- Lee could never climb ladders; rarely twist, steep, crouch, climb stairs, kneel, crawl, and balance; and could occasionally reach. (R. at 35-36).

- Lee could be expected to miss three days per month. (R. at 36).

### III. <u>Standard of Review</u>

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the Commissioner applied the proper legal standard in evaluating the evidence. <u>See</u> 42 U.S.C. § 405(g); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol.</u>

Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It may be less than a preponderance of evidence but is more than a "mere scintilla." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker V. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 390. Reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. Analysis

Lee's brief identifies five errors in the ALJ's decision warranting remand. She contends that:

1. The ALJ and Appeals Council erred by failing to consider evidence submitted after the hearing, contrary to the

13

      rule set out in <u>Myers v. Califano</u>, 611 F.2d 980 (4th Cir. 1979);

2.   The ALJ failed to properly consider evidence of Lee's disabling mental impairment;

3.   The ALJ did not perform the function-by-function analysis required under <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015);

4.   The ALJ improperly discredited the opinions of Lee's treating physicians; and

5.   The ALJ failed to consider the disabling side effects of Lee's medications.

Mem. Supp. Pl.'s Mot. for Summ. J. 2 (ECF No. 15). The second, fourth, and fifth issues are essentially complaints that the ALJ's determination is not supported by substantial evidence and will be evaluated as such. As explained below, this Report concludes that remand is not warranted and recommends the court affirm the Commissioner's decision.

**A.   The Factual Findings in the ALJ's Opinion are Supported by Substantial Evidence**

    1.   <u>Framework for SSA Disability Evaluation</u>

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a

disability as defined in § 423(d). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps. If the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 4:16cv38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

    2.   The ALJ's Decision

The ALJ first found that Lee met the insured status requirements through December 31, 2019. (R. at 13). The ALJ then

16

proceeded through the five-step analysis. At step one, he found that Lee had not engaged in substantial gainful activity since April 21, 2014, the alleged disability onset date. (R. at 13). The ALJ next identified several severe impairments: "degenerative disc disease with protrusions, spinal stenosis, post laminectomy syndrome, cervical radiculopathy, disorders of the left knee, hip and shoulder including degenerative joint disease and osteoarthritis." (R. at 13). At step three, the ALJ concluded that Lee did not have an impairment or a combination of impairments that met or exceeded any listed impairment. (R. at 13).

Having reached step four, the ALJ set out Lee's RFC:

[C]laimant has the residual functional capacity to perform less than a full range of light work.... The claimant is limited to lifting and carrying from waist to chest level. The claimant has to avoid overhead work activity with her left upper extremity. The claimant has to avoid pushing and pulling with her left lower extremity and left upper extremity. The claimant can stand and walk no longer than 30 minutes at a time before sitting and sit no longer than 45-60 minutes before standing for a few minutes. The claimant has to avoid crawling, kneeling, crouching, and climbing ladders, ropes, and scaffolds, but she can stoop on an occasional basis. The claimant has to avoid constant reaching with her left upper extremity. The claimant has to avoid working around vibrations and hazards such as moving dangerous machinery and unprotected heights.

(R. at 14-15). Using this RFC, the ALJ concluded that Lee was unable to perform her past work. (R. at 19). Finally, at step five, the ALJ determined that, based on the testimony of the VE and the ALJ's own consideration of the Medical Vocational Guidelines, 20

17

C.F.R. Pt. 404, Subpart P, App. 2, Lee could adjust to other work that existed in significant numbers in the national economy. (R. at 19-20). He therefore entered a finding that Lee was "not disabled." (R. at 20).

3.   <u>Severity of Lee's mental impairments</u>

Three of the issues Lee raises for review concern the ALJ's evaluation of the evidence in the record and his resulting conclusions. Lee's first argument is that the ALJ erred in finding that her mental impairments were non-severe. This argument fails because the ALJ properly explained his reasoning in assessing Lee's mental condition. Furthermore, the record supports the ALJ's conclusion that Lee does not have a "severe" mental impairment under the SSA regulations.

An impairment is severe only if it significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). Basic work activities include physical, sensory, mental, and social functions. See id. § 404.1522(b).

After identifying certain severe physical impairments, the ALJ stated that "[a]ll other impairments alleged and found in the record are nonsevere" because they did not meet the regulatory definition or were responsive to medication. The ALJ cited to records from Norfolk Psychiatric Associates reflecting mental evaluations within normal limits, save for "blunted affect." Although the record includes diagnoses of depression, Lee's own

treating psychiatrist states the condition is controlled by medication. (R. at 905-06).

Reports from the state agency psychological consultants also support the ALJ's finding. At both the initial and reconsideration levels, the consultants found that Lee's mental impairments were non-severe. Dr. Entin noted that any limitations from Lee's depression would be mild at most and permit a full range of simple and more complex work. (R. at 97). Contrary to Lee's argument, the mere suggestion that her depression "causes at least some limitation in her ability to perform basic activities" does not undermine the ALJ's finding that the condition is non-severe. Mem. Supp. Pl.'s Mot. Summ. J. 21 (ECF No. 15); see 20 C.F.R. § 404.1522(a) (specifying that impairments are not severe unless they significantly limit physical or mental abilities); see also Thomas v. Colvin, No.4:14cv105, 2016 WL 1070826, at *4-5 (E.D. Va. Mar. 16, 2016) (rejecting claimant's argument that ALJ failed to consider mild mental impairments in RFC assessment). Nor was the ALJ required to include an exhaustive analysis of Lee's mental conditions when the record included such minimal evidence of limitations. See 20 C.F.R. § 404.1520a(d)(1) ("If we [the SSA] rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe.").

4.  <u>Consideration of treating physician opinions</u>

Lee next argues that the ALJ improperly discounted opinion evidence from her treating physicians. Because the ALJ properly explained how the opinion evidence informed his decision and why he gave certain opinions greater or lesser weight, this Report concludes remand is unwarranted on this ground.

The responsibility to evaluate medical opinions, assess credibility, and weigh conflicting evidence rests with the ALJ, and the court should not upset the ALJ's findings unless they lack substantial evidence to support them. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Courts often credit treating physicians' opinions given the close relationship they develop with patients. <u>Id.</u> at 655; <u>see</u> 20 C.F.R. § 404.1527(c) (explaining how SSA evaluates opinion evidence from treating physicians). However, ALJs have "discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." <u>Mastro</u>, 270 F.3d at 178.

Here, the ALJ explained the relative weight he gave the opinion evidence. He discounted certain evidence for clear, justifiable reasons. For example, the December 31, 2015 RFC evaluation did not identify a patient and included only a reference to "see notes" as support for its opinions. The ALJ, citing both defects, was unable to "ascertain with a reasonable degree of certainty that it pertains to the claimant," and gave it no weight.

20

(R. at 18). Dr. Waldrop's partial RFC did not address work-related functional limitations and was therefore entitled to little weight. Certain opinions in the record went directly to the question of whether Lee was disabled, an issue reserved to the Commissioner under SSA regulations. See 20 C.F.R. § 404.1527(d) (describing the types of opinions that are not entitled to special significance).

The ALJ stated that the December 19, 2014 opinion from Dr. Wardell was also inconsistent with the record as a whole. Given that the ALJ's extensive review of the medical evidence derives in large part from the treatment notes of Lee's treating physicians, he can hardly be said to have ignored evidence from those sources. The record establishes that while Lee experiences chronic pain, treatment through medication and physical therapy is at least partially effective in alleviating it. Furthermore, treatment notes consistently indicate that Lee's physical capabilities are only moderately impacted by her symptoms. As the ALJ observed, Lee had moderate to full range of motion in her left knee, and pain management records reflected a stable gait pattern, 5/5 motor strength, and no evidence of neurovascular compromise. (R. at 17). As to Lee's hip and shoulder conditions, examinations showed normal gait pattern and only partial impediment to range of motion. (R. at 18). The ALJ noted that Dr. Wardell's opinion that Lee was "permanently and totally disabled" was inconsistent with progress

reports from Lee's treating pain management specialist. (R. at 18).

The ALJ was entitled to discount these opinions in the face of conflicting evidence from Lee's treating providers and contrary opinions from state agency consultants. State agency consultants are highly qualified experts in disability evaluation whose opinions are entitled to consideration by the ALJ. 20 C.F.R. § 404.1513a(b)(1). Here, the ALJ gave moderate weight to the state consultants' opinions regarding Lee's ability to perform light work. (R. at 15-16). The ALJ acknowledged that these opinions did not account for new evidence indicating Lee's increased functional limitations but observed that Lee was nonetheless capable of performing work activities within the light exertional range. (R. at 15-16). An ALJ is entitled to credit the opinions of non-treating physicians that are consistent with the entire record over opinions from treating physicians that are not. See 20 C.F.R. § 404.1513a(b)(1) (requiring ALJs to consider, but not necessarily adopt, prior administrative medical findings); see also Bewley v. Berryhill, No. 2:17cv643, 2018 WL 7017995, at *7-8 (E.D. Va. Sept. 24, 2018) (affirming ALJ opinion that credited state agency consultant's opinion over treating physician's opinion in light of the latter's inconsistency with the record evidence), R&R adopted, 2018 WL 6323072 (E.D. Va. Dec. 4, 2018).

5.   Consideration of evidence of side effects

Finally, Lee argues that remand is necessary because the ALJ's opinion does not consider the side effects of Lee's medication. In determining a claimant's RFC, the ALJ must consider all the evidence in the record, including the possible side effects of any treatment. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). But the ALJ's decision does not have to refer to every piece of evidence in the record. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

The fact that the ALJ's decision does not explicitly discuss Lee's alleged side effects is not fatal. SSR 96-8p contains a lengthy list of factors which the ALJ "must" consider in formulating an RFC, any number of which are likely to be relevant in most cases yet go unremarked. The ALJ stated that he considered the entire record, and this court should not disregard that statement absent evidence to the contrary. Reid, 769 F.3d at 865 (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter")).

Furthermore, the record does not establish that Lee's side effects have any significant impact on her RFC or ability to work. Lee's only supporting citations point to her subjective statements and the unnamed RFC evaluation Dr. Wardell prepared in December

23

2015. (See R. at 58-60, 226-27, 233, 239, 252, 1179). By contrast, records from Lee's treating pain management specialist from the same month indicate that Lee was not experiencing any side effects from her current treatment. Lee's argument on this point invites this court to engage in re-weighing of the evidence, contrary to the standard of review. This Report will decline the invitation and recommend the court reject this basis for remand.

**B.    Neither the ALJ nor the Appeals Council Erred in their Treatment of Lee's Post-Hearing Evidence Submission**

Lee's first argument for remand relies on medical evidence she submitted after the ALJ hearing. Lee claims that the ALJ's opinion makes no mention of this evidence or how it factored into the disability determination. This argument fails because Lee's post-hearing submission was not timely, therefore the ALJ could not consider it. Although that evidence was available to—and considered by—the Appeals Council, it concluded that the additional medical reports were not reasonably likely to change the outcome. (R. at 2).

Parties are responsible for ensuring that the ALJ has all relevant evidence at least five business days before a scheduled SSA hearing. 20 C.F.R. § 404.935(a). The ALJ may decline to consider evidence submitted after this deadline, unless administrative action caused the delay, or it was the result of unexpected or unavoidable circumstances. See § 404.935(b).

A claimant dissatisfied with a hearing decision may request review by the Appeals Council. Id. § 404.967. The Appeals Council will review a case if it determines the ALJ committed an abuse of discretion or an error of law, the decision is not supported by substantial evidence, or the case involves an important policy or procedural issue. Id. § 404.970(a)(1)-(4). It may also review a case if, after the hearing, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." § 404.970(a)(5). The Appeals Council will only consider such new evidence if the proponent shows "good cause" for failing to submit it to the ALJ. § 404.970(b). If the Appeals Council receives new evidence and rejects it for failure to show good cause, it must notify the proponent of the reasons for rejection and the right to file a new application. § 404.970(c). If the Appeals Council accepts new evidence, it must explain how that evidence impacted its decision to grant or deny review. See Myers, 611 F.2d at 983 (reversing and remanding Appeals Council's decision because it failed to make "specific findings" about new evidence).

In her brief, Lee argues that the ALJ erred by failing to consider medical record evidence submitted post-hearing. She states, in conclusory fashion, that the evidence was "timely" submitted and probative of limitations related to a shoulder

injury. At minimum, she argues, the ALJ's failure to explain how the evidence factored into the decision is reversible error.

Contrary to Lee's suggestion, this evidence was not "timely" submitted to the ALJ, who therefore had no obligation to review it. At the outset of the March 1, 2017 hearing, Lee's attorney requested additional time to provide updated records from Wardell Orthopedics, and the ALJ agreed to keep the record open for ten days after the hearing. (R. at 44-45, 75). The submissions in the record, however, are dated July 5, 2017, far outside this short extension and months after the ALJ's decision issued on April 26, 2017. (R. at 33-40). Lee gives no indication that she made the records available before the date marked in the record, and she cannot fault the ALJ for failing to consider evidence that only appeared months after the hearing and decision.

The Appeals Council's consideration of these post-hearing submissions was also proper. When Lee requested review of the ALJ's decision, the Appeals Council explained that she could submit new evidence and outlined the governing rules. Lee submitted the records in question, but it does not appear from the record that she offered any other explanation as to why this new evidence warranted reversal. Furthermore, although a portion of Lee's post-hearing submission contained medical records predating the ALJ hearing, the Appeal Council appears to have excused any untimeliness in their submission. In its notice of denial, the

Appeals Council considered the records but stated, "We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. at 2). This statement explaining its disposition of the new evidence complies with the governing regulations. See Meyer v. Astrue, 662 F.3d 700, 704-06 (4th Cir. 2011) (rejecting argument that Appeals Council must provide detailed findings and reasoning when denying review). Lee's post-hearing evidence was largely cumulative of the material already in the record, and the Appeals Council's treatment of her post-hearing submission does not provide a basis for remand.

## C.    The ALJ's Residual Function Capacity Determination Was Proper

Lee next argues that the ALJ did not conduct a proper function-by-function analysis when assessing her residual functional capacity ("RFC"). She asserts that the ALJ failed to consider certain medical evidence and functional limitations related to mental and physical impairments. In doing so, Lee contends, the ALJ did not comply with the Fourth Circuit's decision in Mascio v. Colvin. This Report rejects Lee's argument and finds no Mascio violation in the ALJ's opinion.

If an ALJ's five-step analysis reaches step four, the ALJ will first make a finding on the claimant's RFC using all relevant evidence, medical and otherwise. 20 C.F.R. §§ 404.1520(e), 404.1545. A claimant's RFC is the most an individual can do despite the physical and mental limitations on his or her ability to do

work. Lewis v. Berryhill, 858 F.3d 858, 861-62 (4th Cir. 2017). Residual capacities "must be expressed in terms of work-related functions" when assessing a claimant's RFC. SSR 96-8p, 61 Fed. Reg. 34,474, at 34,477 (July 2, 1996).

Mascio, in general terms, concerns the degree to which an ALJ must explain an RFC determination and tie it to evidence in the record. In Mascio, the Fourth Circuit ordered remand after finding the ALJ's opinion "sorely lacking" in the required analysis under Social Security Ruling 96-8p. 780 F.3d at 636.  The court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Id. However, it held that when the ALJ's opinion "fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand is appropriate. Id.; see also SSR 96-8p, 61 Fed. Reg. at 34478 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). The Mascio standard does not require exhaustive detail, but a reviewing court must be able to ascertain how an ALJ reached his or her decision. See Dennis v. Berryhill, 262 F. Supp. 3d 303, 309 (W.D.N.C. 2019) (ALJ must resolve evidentiary conflicts and support narrative discussion with citations to supporting

evidence). The ALJ's opinion cannot leave the reviewing court to "guess about how the ALJ arrived at [her] conclusion." Id. at 310 (alteration in original) (quoting Mascio, 780 F.3d at 637).

ALJ opinions satisfy Mascio's analytical rule so long as they identify supporting evidence and explain why conflicting evidence was less credible. See, e.g., Woodlief v. Berryhill, No. 5:16-CV-191, 2017 WL 4164076, at *4-5 (E.D.N.C. Sept. 20, 2017) (upholding ALJ's opinion because it supported its conclusion by reference to the evidence and explained why plaintiff's subjective statements were less credible); Mollett v. Colvin, No. 2:13-28018, 2015 WL 1481842, at *3 (S.D.W. Va. Mar. 31, 2015) (rejecting Mascio challenge because "a reviewer can readily ascertain the ALJ's thinking as it is evident in his discussion of the claimant's testimony and the other evidence of record"). Although this explanation is required, the reviewing court must remember that "the duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts." Bisceglia v. Colvin, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016).

The ALJ in this case properly considered and explained the relevant evidence of mental and physical limitations when formulating Lee's RFC. As to Lee's depression, the ALJ found it was non-severe, controlled by medication, and imposed mild functional limitations at most. (R. at 18). The ALJ's opinion cited directly to the records of Lee's treating psychiatrist, (see R. at

874-908, 1337-38), and reached the same conclusion as the state agency psychological consultant, (see R. at 83, 97). This explanation satisfies the requirements of Mascio, and Lee has identified no other evidence of mental limitations in the record which the ALJ failed to address.

Likewise for Lee's alleged physical limitations, the ALJ properly explained how the evidence informed the RFC. Notably, the ALJ did not reject Lee's allegations of chronic pain and associated symptoms. (See R. at 15-16 (documenting Lee's history of physical disorders and chronic pain)). The ALJ acknowledged that Lee's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 16). But after examining the full evidentiary record, the ALJ concluded that Lee's limitations did not eliminate her ability to perform a carefully circumscribed range of light work. The narrative discussion in the ALJ's opinion is consistent with the governing regulations. See 20 C.F.R. § 404.1529 (explaining how the SSA evaluates symptoms using both subjective statements and objective medical evidence). It catalogues, in great detail, an extensive history of medical testing and treatment. (See R. at 15-18). Ultimately, the ALJ observed that while Lee has a verifiable history of physical conditions, they have only a limited impact on her physical functioning. The ALJ explained why he gave certain contrary opinion evidence from Lee's physicians little to no weight: these opinions

either went to the ultimate issue of disability reserved to the Commissioner or were otherwise inconsistent with the evidence of record. (See R. at 18). The ALJ therefore properly related the medical evidence to Lee's physical functioning as required under Mascio.

This Report therefore finds no Mascio error in the RFC determination. The ALJ properly considered both the objective medical evidence and Lee's subjective statements regarding her symptoms, and properly reconciled conflicting evidence in reaching his conclusion. To the extent Lee merely challenges the ALJ's findings, the standard of review does not permit this court to conduct a renewed evaluation. Having already determined that the ALJ's findings are supported by substantial evidence, see supra, Lee's Mascio challenge does not warrant remand.

## Conclusion

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgement, (ECF No. 14), GRANT Defendant's Motion for Summary Judgment, (ECF No. 25), and AFFIRM the final decision of the Commissioner.

## Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and

recommendations within fourteen (14) days from the date of service of this report on the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).


/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 19, 2019